# MEMORANDA

OF

# CASES NOT REPORTED IN FULL.

THE DAVIS SEWING MACHINE COMPANY OF WATERTOWN, NEW YORK, Respondent, v. WILLIAM J. BEST, as Receiver, etc., Appellant.

*Trust company — in what securities it may invest its capital and trust funds — it can only buy such as the statute authorizes — when it may enforce a security which it was not authorized to buy.*

APPEAL from a judgment in favor of the plaintiff, in an action of replevin tried at the Jefferson Circuit, before the court without a jury.

The action was brought to recover ten notes, of $1,000 each, issued by the plaintiff. The notes were negotiable in form, the names of the payees being left blank. They had been delivered to Mr. Winslow, the president of the Davis Sewing Machine Company, the plaintiff, to be by him negotiated. Mr. Winslow, who was also the president of the Security Bank, delivered the notes (together with ten others also issued by the plaintiff and then owned by the bank) to the National Trust Company of the city of New York, of which the defendant is the receiver, as collateral security to a loan of $10,000, made by the trust company to the bank. No note or obligation of the bank to secure this loan was taken by the trust company. Five thousand dollars of the loan was subsequently paid by the bank, and the ten notes owned by the bank were then upon its request surrendered to it. The plaintiff sought to recover the notes in question upon the ground that Mr. Winslow had no authority to pledge them as he had done, they having been delivered to him solely for the purpose of sale.

The court at General Term, after a full consideration of the evidence and the findings, were of the opinion that it had not been

found that the trust company had any knowledge of the wrongful acts or want of title of Mr. Winslow or the bank, when it took the notes, and that it did not appear but what they were, when delivered to Mr. Winslow, completed instruments, ready for delivery to a purchaser. It also held that the making of the loan by the trust company to the bank was not a violation of the laws of the State prohibiting unauthorized banking.

Judge BARKER then considered the right of the trust company to purchase the notes as follows:

"I will now consider the charter which created the corporation making the loan, for the purpose of ascertaining whether it violated any of its provisions. Many of the powers conferred upon this company are exceptional, and require careful examination in determining the question as to the legality of the hypothecation. The act of incorporation is chapter 460, Laws of 1867, and by section 2 power is given to receive moneys in trust, and to accumulate the same at such rate of interest as may be obtained or agreed upon, and to allow such interest upon the trust fund as may be stipulated for, not exceeding the legal rate. To accept and execute all such trusts of every description not inconsistent with the laws of this State, as may be committed to it by any person or persons whatsoever, or by any corporation, or by order of the Supreme Court, or by a surrogate, or by any of the courts of record in this State. To take and accept by grant, assignment, transfer, devise or bequest, and. hold any real or personal estate on trusts created in accordance with the laws of this State, and execute such legal trusts in regard to the same on such terms as may be declared, established, or agreed upon in regard thereto. To accept from and execute trusts from married women in respect to their separate property, whether real or personal, and act as agents for them in the management of such property. Power and privilege is granted to the corporation to act as guardian of the estate of any infant when appointed by any court of this State having jurisdiction to make the appointment, and every court in which moneys may. be paid by parties, or be brought by order or judgment, may by order direct the same to be deposited with the said company. On any sum of money not less than $100 which shall be collected and received by the said company in its capacity as guardian, receiver or depository of

moneys in court an interest shall be allowed by the said company of not less than three per cent annually, which rate of interest shall continue until the moneys so received shall be duly expended **or** distributed.

" There is a provision, that when the corporation is named as guardian, or made the depository by an order of court, no bond or collateral security shall be required from the company, and in case of dissolution the debts due from the company as guardian, receiver or depository of moneys in court shall have a preference. The capital stock of the company was fixed at one million dollars, with power to increase the same, and such capital when paid in was required to be invested in bonds and mortgages on unincumbered real estate worth double the amount loaned thereon, or in the stocks of the United States or of this State, or in stocks and bonds of the incorporated cities of this State, authorized to be issued by the legislature or in such real estate as may be required for the use of the company in the erection of a suitable building in which to carry on its business. (See amendment of sec. 7, chap. 276, Laws of 1870.)

" By consulting the entire act it will be observed that the paid in capital, the moneys received as trustees, and the fund received by it as guardian or by order of court, are regarded and treated as separate and distinct funds. By the original act moneys not received in trust or paid in to the company as guardian or by order of court, could be loaned on personal property without requiring any collaterals. An amendment to section 18 was made in 1872, chapter 725, which provides for investing all moneys received by the company, not including its capital stock, and the entire section reads as follows:

" The trustees shall have a discretionary power of loaning or otherwise investing the moneys received by them, in public stocks of the United States or of any State, or the bonds or stock of any incorporated city or county in this State authorized by law, or interest paying bonds or dividend paying stock of any corporation or company, or on bonds and mortgages on unincumbered real estate within the State of New York, worth double the amount loaned thereon. Said company shall not invest in such dividend paying stocks to an amount exceeding fifty thousand dollars in any one corporation or company. In making loans secured by dividend

paying stocks of any corporation or company, such stocks shall not be taken as collateral at a less margin than twenty per cent of the market value thereof at the time of making such loan.

" It is clear, from a reference to the provisions of the charter, that the corporation was authorized to loan its capital and all the funds which were deposited with it from the sources and for the purposes mentioned in the act. Without this power its business of receiving and paying interest upon deposits, executing trusts, and managing the assets of married women, could not be carried on.

" No serious question is made, as I comprehend the argument of the distinguished counsel for the respondent, that the loan itself as distinguished from the security taken was invalid. The loan is separate from the security taken and may be legal and collectible from the borrower, although the security received be illegal and void. (*Utica Ins. Co.* v. *Scott*, 19 Johns., 1 ; *Robinson* v. *Bland*, 2 Burr., 1077 ; *Utica Ins. Co.* v. *Kip*, 8 Cow., 20 ; *Pratt et al.* v. *Short et al.*, 79 N. Y., 437.)

" The mode of investment of the funds deposited with the company is prescribed in the eighteenth section, and as there is a specification of the particular securities in which it shall be lawful for the corporation to invest the same, operates by implication to restrain and prohibit investment in any securities other than those particularly specified. This rule of construction was given in *Pratt* v. *Short* (*supra*), where the charter of a corporation then under consideration contained similar provisions. (See, also, *N. Y. Firemen's Ins. Co.* v. *Ely*, 2 Cow., 678.) As the seal of the respondent corporation was not attached to the instruments they are not bonds. The word bond *ex vi termini*, signifying a sealed instrument. (Bouvier's Law Dictionary.)

This brings us to the question whether the security given by the Security Bank at the time of making the loan can be enforced for the benefit of the depositors, whose funds came under the control and management of the trust company, notwithstanding the prohibition. The proposition is to be discussed and considered the same as if the Security Bank was the true owner of the notes. If the pledge made to the trust company as a security for its loan can be upheld as available as a security against any claim which the Security Bank as borrower could urge against the validity

of the transaction, then the respondent cannot in justice or equity interfere or set up a title good as between it and the Security Bank for the reason already considered, it having by its own voluntary act bestowed upon the Security Bank an apparent title to the notes. As between the parties now before the court, the respondent corporation is to be regarded as a maker of negotiable instruments liable in any event to pay the same.

"That corporation cannot be heard upon the question of its title, until after it has been determined that the defendant as receiver cannot make the notes available as a security and as a means to replace the loan made by the trust company. There is no declaration in the charter that a security taken in violation of its provisions shall be void and unavailable to the company or those whose interests it represents, nor is there any mention that such securities may be enforced notwithstanding the prohibition. In the absence of such provisions the intention of the legislature on the subject is to be ascertained, from all the provisions of the charter. In a sense every act prohibited by law is illegal, but there is no general rule of law, that every prohibited act is so far invalid that it may not be enforced in courts of justice. If the legislature prohibits an act and imposes a penalty upon the wrong-doer, then the penalty is usually regarded as the punishment, and the contract forbidden may be enforced by those interested in its performance. When the statute is silent and contains nothing from which the contrary can be properly inferred, contracts in contravention of its provisions are void. With a view of ascertaining the purpose of the legislature, all the provisions of the statute in question, must be examined to discover whether it was intended to prevent courts of justice from enforcing contracts in relation to the act prohibited. (*Gold Mining Co.* v. *National Bank*, 96 U. S. R., 640; *O'Hare* v. *Second National Bank of Titusville*, 77 Pa., 96.)

"In the enactment creating the trust company a corporation, the legislature made it a trustee in name and in fact of the funds which might be deposited with it. It was constituted the lawful custodian of funds subject to the order of the several courts of this State, when properly designated for that purpose; it was also authorized to act as guardian for infants on receiving a judicial appointment. The office which this corporation was authorized

·to· perform; the character of the funds, committed to its control and management are such, that it may be fairly and reasonably believed, that the legislature did not intend to make void and unavailable pledges and securities taken by it, which were not. in strict conformity to the terms of its charter. That ·the restraints imposed as to making loans, were intended as a rule for the government of the corporation, and if the restrictions provided were not adhered to, then, notwithstanding the prohibition, the same were enforceable for the purpose of securing a repayment of the money loaned.

"It is my opinion that the legislature did not intend that an excess of loan beyond the proportionate value of property as specified in the act, or the taking of a class of securities prohibited should be regarded as void, and thus enable the borrower to withdraw the security from the hands of the·corporation without paying the loan, and thereby destroying the ability of the company to pay its creditors. (*National Bank* v. *Matthews*, 98 U. S. R., 621 ; *Crocker* v. *Whitney*, 103 id., 99; *Gold Mining Co.* v. *National Bank*, *supra*.) This case is distinguishable from *Pratt* v. *Short* (*supra*), for in that case it was held, that the act of the corporation, in discounting the note sued upon, was in violation of the statute prohibiting unauthorized banking, which declares that all contracts in violation of its provisions are void.

"The case of the *Bank of Salina* v. *Alvord* (31 N. Y., 473), may also be distinguished from the case in hand as the plaintiff there was a banking corporation proper, organized under and subject to the banking laws then in force. It was the general policy of that system of laws to confine all loans and discounts by banks within the limits provided by the act, and to hold all loans and contracts contrary to the provisions of the same void."

Judgment appealed from should be reversed, new trial granted, with costs to abide the event.

*A. J. Vanderpoel* and *Delos McCurdy*, for the appellant.

*Francis Kernan*, for the respondent.

Opinion by BARKER, J.

Present — SMITH, P. J., HARDIN and BARKER, JJ.

Judgment reversed, and new trial ordered, costs to abide event.